# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-1893V
### Filed: June 5, 2025

ROSEMARY HARVILLE,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Special Master Horner

*Phillip S. Georges, Phillip S. Georges, PLLC, Nashville, TN,* for petitioner.
*Lynn Christina Schlie, U.S. Department of Justice, Washington, DC,* for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On September 23, 2021, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") following receipt of her September 27, 2018 influenza ("flu") vaccination. (ECF Nos. 1, 22, 24.) The case was dismissed without prejudice on September 23, 2024, based on the parties' joint stipulation of dismissal. (ECF No. 49.) Subsequently, petitioner moved for an award of attorneys' fees and costs totaling $19,457.17, including $15,419.30 in attorneys' fees and $4,037.87 in attorneys' costs. (ECF No. 50.)[3] However, respondent opposes the motion, contending there was not a reasonable basis for the filing of the petition. (ECF

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

[3] Petitioner incorrectly filed the motion as an unopposed motion. (ECF No. 50.) Petitioner's counsel did not actually represent in the motion that he had conferred with respondent's counsel to determine respondent's position.

No. 51.)  For the reasons discussed below, I now conclude that there was *not* a reasonable basis for the filing of this petition and petitioner's request for attorneys' fees and costs is denied.

## I.    Procedural History

Between September of 2021 and May of 2023, petitioner filed medical records and an affidavit by petitioner.[4]  (ECF Nos. 1, 14, 22, 24.)  Petitioner also filed two reports by neurologist Christopher D. Lee, M.D., as well as the results for the EMG/NCS he performed as part of his independent medical examination.  (Exs. 3, 5; ECF No. 32.)  On July 20, 2023, respondent filed his Rule 4 report, recommending against compensation.  (ECF No. 27.)  In the spring of 2024, respondent filed responsive reports by rheumatologist Roland Staud, M.D., and neurologist Kourosh Rezania, M.D. (ECF Nos. 36, 39, 41; Exs. A-D.)

On April 16, 2024, I filed a Rule 5 Order, discussing my preliminary evaluation of the record evidence and stating my tentative conclusions.  (ECF No. 40.)  I noted that both petitioner's pleading and proffered medical opinion were limited to asserting a Table SIRVA claim, which is subject to four specific criteria.[5]  (*Id.* at 2.)  However, I noted that petitioner was unlikely to demonstrate that her pain and reduced range of motion were limited to the shoulder in which she received her vaccination or that there is no other condition or abnormality that would explain her symptoms, as required for a Table SIRVA.  (*Id.* at 2-3.)  Accordingly, I recommended "that petitioner give strong consideration to voluntarily dismissing her claim" as she "has little to no possibility of prevailing as her claim is currently couched."  (*Id.* at 3.)  I explained that, if petitioner intended to proceed with her claim, then she would likely need to provide an expert orthopedic and/or rheumatologic opinion sufficient to prove causation-in-fact and to persuasively counter Dr. Staud's opinion on respondent's behalf.  (*Id.* at 3-4.)

However, petitioner did not file any additional material in response to my Rule 5 order.  Accordingly, I issued an order to show cause why the case should not be

---

[4] Petitioner refiled her exhibits on several occasions throughout this litigation; however, this decision references the exhibits that accompany her second amended petition, filed on May 19, 2023, at ECF No. 24.  Although the exhibits do not include bates numbering, this decision references the exhibits by the exhibit numbers that they are associated with in the docket text.  For instance, Exhibit 4 references the medical records that are filed at ECF No. 24-4, which is labeled as "Exhibit Exhibit 4: Summit Medical Group" on the docket.

[5] Table Injury cases are guided by a statutory "Qualifications and aids in interpretation" ("QAI"), which provide more detailed explanation of what should be considered when determining whether a petitioner has actually suffered an injury listed on the Vaccine Injury Table.  42 CFR § 100.3.  For SIRVA, the QAI requires petitioners to demonstrate: (1) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (2) Pain occurs within the specified time-frame; (3) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (4) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, and any other neuropathy).  42 CFR § 100.3(c)(10).

dismissed.  (ECF No. 43.)  In response, on September 23, 2024, petitioner filed a joint stipulation of dismissal pursuant to Vaccine Rule 21(a).  (ECF No. 47.)

## II.    Factual History

Petitioner received the vaccination at issue at the office of her primary care provider on September 27, 2018.  (Ex. 4, pp. 1, 27.)  The site of injection was not recorded.  (*Id.*)  She returned to her primary care provider in October of 2018, complaining of cough and difficulty sleeping that started the day after receiving her flu shot, but raising no complaint of shoulder pain.  (*Id.* at 28-31.)  On January 3, 2019, more than three months post-vaccination, petitioner again returned to her primary care provider, complaining of "pain in right arm to elbow that went across neck over to left arm and hand since having her flu vaccine" and also complaining of ongoing cough, congestion, and aches.  (*Id.* at 32.)  In a later history, petitioner would clarify to her rheumatologist that her extremity symptoms began about one-week post-vaccination. (Ex. 9, p. 42.)

Petitioner returned multiple times for further evaluation throughout 2019.  She was at times diagnosed by her primary care provider as having either biceps tendinitis or adhesive capsulitis.  (Ex. 4, pp. 38, 109.)  However, although she complained of pain and some reduced range of motion in her right shoulder, petitioner's bilateral symptoms affecting her hands were prominent features of her presentation and her primary care provider suspected carpal tunnel syndrome or cervical radiculopathy.  (*Id.* at 32-46, 56.) Although petitioner associated her symptoms to her flu vaccine, her primary care provider did not agree, stressing the bilateral nature of her upper extremity symptoms. (*Id.* at 45, 69.)  Following an abnormal EMG/NCS study in September of 2019, petitioner was diagnosed with carpal tunnel syndrome.  (*Id.* at 60, 66, 69.)  However, petitioner also began experiencing symptoms in her feet and was found to have elevated rheumatoid factor and positive antinuclear antibody ("ANA").  (*Id.* at 84, 94-96.)  She was referred to a rheumatologist in September of 2020 and was assessed as having an inflammatory joint disease, with a differential diagnosis of Sjögren's syndrome and rheumatoid arthritis.  (Ex. 9, pp. 40-45.)  Petitioner reported improvement after treatment with hydroxychloroquine and meloxicam, including improvement of her shoulder pain.  (*Id.* at 17-18, 28.)  By January of 2022, she was free of symptoms of inflammatory arthritis and carried diagnoses of a connective tissue disorder and Sjögren's syndrome.  (*Id.* at 17-18.)

Petitioner also presented to neurologist Christopher Lee, M.D., in September of 2020 "for an independent medical examination, for which her attorney requested I evaluate her.  The purpose of this evaluation is diagnostic, for consideration of her legal case."  (Ex. 5, p. 1.)  Dr. Lee recorded a chief complaint of "pain in hands, right arm, left foot."  (*Id.*)  Regarding her history, Dr. Lee documented that petitioner:

[R]eports a seasonal influenza vaccination by injection in the right deltoid around 9/20/2018.  She had pain the location of the injection, and 2 weeks later, she had a significantly swollen "sack" over her elbow, about in the

location of the olecranon bursa.  Then about 2 weeks after that, she developed pain radiating down from the right shoulder to the wrist and hand on the right.  About the same time, she experienced pain in the left hand, mostly affecting digits 1-3, but the left arm did not have pain more proximally as the right did.  Carpal tunnel syndrome was considered but not confirmed with testing, and she also was thought possibly to have [rheumatoid arthritis] or [systemic lupus erythematosus].  She tried using wrist splints but without benefit.  Soon after this, her left foot also has navicular/cuneiform and plantar arch pain.

The pain has continued to worsen in the past two years, still from the shoulder down on the right and in the left hand, digits 1-3, as well as in the left foot, with a great deal of sensitivity in these same areas.  This is constant without much fluctuation.  She rates the pain as 9.5/10 on the pain scale in the right arm, and 8/10 in the left hand.  She feels she is impaired in many ways with poor strength.  She feels the muscles of her arms in particular are "gone".  She is not able to open jars or bottles, and has trouble making a fist.  She has sloppy handwriting and has difficulty with utensils.  She needs help from her husband in dressing.  She feels her legs are weak too. Walking is difficult with poor balance.  She no longer drives.  Activity makes these areas of pain worse, but also if she is sleeping, she will wake with greater pain.  She can at times rub the painful areas of her body, with some benefit in the degree of pain.

(*Id.*)

Dr. Lee characterized petitioner as presenting "mainly with a disorder of pain through the right arm" but also with similar symptoms in the left hand and foot.  (Ex. 5, p. 3.)  He performed an EMG study, which he felt was "reassuring."  (*Id.*)  He considered the possibility that petitioner suffered brachial neuritis, but did not find this to be a good explanation given that petitioner had the same symptoms in her left hand and foot.  (*Id.* at 3-4.)  Dr. Lee did not render a definite diagnosis, indicating that "the precise etiology remains unclear."  (*Id.* at 4.)  Instead, he noted that her presentation could fit any of the following: rheumatologic conditions such as rheumatoid arthritis or lupus, dysesthesias, complex regional pain syndrome, fibromyalgia, or central pain sensitization.  (*Id.*)

After a further exchange with petitioner's counsel, Dr. Lee prepared a follow up report in December of 2020.  (Ex. 3.)  In that report, he opined that petitioner's "right shoulder pain fulfills criteria for SIRVA."  (*Id.* at 1.)  Despite the history contained in his September report, Dr. Lee opined that petitioner experienced shoulder pain within 48 hours of vaccination.  (*Id.*)  He noted that petitioner had pain and limited range of motion affecting her right shoulder without consideration of whether her condition was limited to her shoulder, and he treated the lack of a neurologic injury as complete satisfaction of the requirement that no other condition or abnormality be present to explain the symptoms.  (*Id.*)

4

### III.    Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S. 369 (2013).  Such awards are within the special master's discretion.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362-63. "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into consideration.  *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).

Determining whether there was a reasonable basis for the filing of a petition involves examining the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act.  *Cottingham ex rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020).  Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

42 U.S.C. § 300aa-11(c)(1).

The evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  *Cottingham*, 971 F.3d at 1346.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *5, 6 (Fed. Cl. Spec. Mstr. Aug. 23, 2012).  Instead, the special master evaluates whether objective evidence, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence of the required showing.  *Cottingham*, 971 F.3d at 1344, 1346.

Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021). The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Id.* (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 n.3 (4th Cir. 2021)). A special master may look at the totality of the circumstances; however, no specific evidentiary framework is required. *Sheller v. Sec'y of Health & Human Servs.*, 121 F.4th 1301, 1306 (Fed. Cir. 2024); *see also Cottingham*, 971 F.3d at 1344, 1346; *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). "More than a mere scintilla" of objective evidence supporting causation can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80 (quoting *Cottingham*, 971 F.3d at 1346); *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed, at minimum, circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

When assessing the reasonable basis for a petition, special masters are encouraged to keep in mind "the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal counsel." *Sheller*, 121 F.4th at 1308-09. Nonetheless, counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting attorney representation in vaccine cases, as contemplated by the attorneys' fees provisions of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34-35 (1992).

## IV.    Respondent's Opposition

Petitioner's motion sought to address the reasonableness of the amount sought for attorneys' fees and costs, but did not address the legal standard for awarding fees and costs in this program or seek to substantiate the appropriateness of such an award in this case. (ECF No. 50.)

In response to the motion, respondent argues that "petitioner has not provided any objective evidence to support her contention that the flu vaccine caused her to develop a Table SIRVA or any other alleged injury, and therefore she does not have a reasonable basis to bring her claim." (ECF No. 51, p. 9.) Moreover, respondent argues that petitioner's medical history is incompatible with the requirements for a Table SIRVA. In particular, respondent stresses that petitioner's vaccination record did not

demonstrate laterality, that petitioner reported pain beyond her allegedly affected shoulder, that another condition is present that would explain her symptoms, and that her primary care provider did not agree that her symptoms were due to her vaccination. (*Id.* at 9-10 (citing Ex. 4, pp. 10, 24, 32, 36, 43, 56, 69, 80; Ex. 8, pp. 2, 14, 18, 21).) Respondent acknowledges that petitioner also filed a report by neurologist Dr. Lee; however, he argues that this report does not support a reasonable basis because Dr. Lee acknowledged facts incompatible with his opinion that petitioner satisfied the requirements for a Table SIRVA.  (*Id.* at 10 (citing Exs. 3, 5).)

Petitioner did not file any reply responding to respondent's arguments.

## V.    Discussion

As noted above, demonstration of a reasonable basis for the filing of a petition involves examination of the objective evidence available to support the *prima facie* petition requirements under section 11(c) of the Vaccine Act.  *Cottingham*, 971 F.3d at 1345-46.  Thus, petitioner must have presented "more than a mere scintilla of evidence" that she "sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine."  *Id.*

In this case, petitioner alleged a Table SIRVA and none of the three petitions filed in this case include any alternative pleading of a causation-in-fact claim.  (ECF Nos. 1, 22, 24.)[6]  Moreover, when prompted by my Rule 5 Order and Order to Show Cause, petitioner declined to amend her petition to assert any cause-in-fact claim.  (*See* ECF Nos. 40, 43.)  Accordingly, petitioner has not presented any basis upon which to find that any of her diagnosed medical conditions could support a reasonable basis for the filing of the petition(s).[7]  Therefore, given the allegations of the petition(s), the only question at issue is whether there is more than a mere scintilla of evidence that petitioner suffered an injury consistent with the Table requirements for SIRVA.

SIRVA is by definition "an injury to the musculoskeletal structures of the shoulder."  42 C.F.R. § 100.3(c)(10).  Here, however, there is not more than a mere scintilla of evidence of a musculoskeletal injury to the shoulder.  Instead, petitioner's reports of pain affecting the shoulder were a part of a broader presentation that was

---

[6] Petitioner filed three petitions. (ECF Nos. 1, 22, 24.)  The first petition mistakenly indicates in the opening paragraph that petitioner suffered Guillain-Barré syndrome.  (ECF No. 1, p. 1.)  However, subsequent portions of the petition make clear that the petition was actually filed in pursuit of an alleged SIRVA.  (*Id.* at 6-7.)  The two amended petitions consistently allege SIRVA.  (ECF Nos. 22, 24.)

[7] Section 11(c) of the Vaccine Act requires that "[a]n off-Table petitioner, who does not benefit from a presumption of causation, must specify [her] vaccine-related injury" in order to "shoulder the burden of proof on causation."  *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010).  "Although the Vaccine Act does not require absolute precision, it does require the petitioner to establish an injury—the Act specifically creates a claim for compensation for '*vaccine-related* injury or death.'"  *Stillwell v. Sec'y of Health & Human Servs.*, 118 Fed. Cl. 47, 56 (2014) (quoting 42 U.S.C. § 300aa-11(c)(1)), *aff'd*, 607 F. App'x. 997 (Fed. Cir. 2015).  To the extent petitioner's actual diagnosis remains unclear, petitioner must assert "more than just a symptom or manifestation of an unknown injury."  *Broekelschen*, 618 F.3d at 1349.

assessed by her treating physicians first as a potential neurologic injury (carpal tunnel syndrome) and later as a presentation of a rheumatologic injury (Sjögren's syndrome, rheumatoid arthritis, or connective tissue disorder). Petitioner's shoulder pain improved with the treatment she was prescribed for her rheumatologic condition, and there is no indication she ever had any separate treatment for a musculoskeletal injury to the shoulder. (*E.g.*, Ex. 4, p. 110.) Although petitioner was assessed by her primary care provider at one point with right shoulder adhesive capsulitis and biceps tendinitis prior to her evaluation by a rheumatology specialist (*Id.* at 38, 109), this was based on minimal physical exam findings and there was no specialist follow up, additional confirmation such as by MRI, or any targeted treatment. Nor is it clear from the medical records that these diagnoses withstood the subsequent rheumatological evaluation that was recommended. In that regard, petitioner's counsel additionally secured an independent medical exam specifically for the purpose of supporting petitioner's claim. (Ex. 5.) However, that assessment by Dr. Lee did not include any assessment of a right shoulder injury. Instead, Dr. Lee declined to render a definite diagnosis, indicating that "the precise etiology remains unclear." (*Id.* at 4.) Consistent with the medical records, he opined that petitioner's presentation, inclusive of her right shoulder pain, was compatible with broader rheumatologic conditions such as rheumatoid arthritis or lupus, or, alternatively, other conditions that could explain a wider pain presentation, such as dysesthesias, complex regional pain syndrome, fibromyalgia, or central pain sensitization. (*Id.* at 3-4.) Thus, Dr. Lee's assessment and diagnostic opinion are also not compatible with SIRVA.

Although medical records can provide circumstantial evidence of causation, "it is not the case that isolated pieces of evidence potentially supportive of petitioner's claim will demonstrate a reasonable basis no matter what the totality of the record indicates." *Kelly v. Sec'y of Health & Human Servs.*, No. 20-885V, 2023 WL 6889297, at *7 (Fed. Cl. Spec. Mstr. Sept. 22, 2023); *accord Sheller*, 121 F.4th at 1306-07 (approving of the special master's use of *Althen* as a framework to consider whether the record as a whole supported a reasonable basis). Even accounting for the adhesive capsulitis and tendinitis assessments, petitioner's complaints of shoulder pain cannot be readily distinguished from her broader presentation. From the beginning of her course of treatment, petitioner placed her shoulder pain in the context of other pain symptoms, including pain affecting her upper extremities bilaterally (Ex. 4, p. 32), and her rheumatologic diagnoses can potentially explain shoulder pain. Therefore, even if petitioner's adhesive capsulitis and/or biceps tendinitis diagnoses constituted more than a scintilla of evidence of a musculoskeletal injury to her shoulder more broadly, her actual clinical presentation would still be *incompatible* with the more detailed third and fourth SIRVA criteria, which require that pain and reduced range of motion be limited to the affected shoulder and that no other condition be present that would explain her symptoms.[8] 42 C.F.R. § 100.3(c)(10)(iii-iv). Decisions by the Court of Federal Claims

---

[8] Although Dr. Lee offered a bare assertion in his second report that petitioner's condition was consistent with SIRVA, that opinion on its face misstates the SIRVA criteria. (Ex. 3.) In concluding petitioner's presentation qualified as a SIRVA, Dr. Lee disregarded the requirement under the third SIRVA QAI criterion that the petitioner's pain and reduced range of motion be *limited to* the affected shoulder and he also incorrectly reduced the fourth criterion to a question of ruling out neurologic causes. When the

have explained that "a petitioner has no reasonable basis to bring a claim that is facially devoid—or insurmountably deficient, as the case may be—with respect to an element necessary to establish entitlement." *Cottingham v. Sec'y of Health & Human Servs*., 159 Fed. Cl. 328, 334 (2022), *aff'd per curiam*, No. 2022-1737, 2023 WL 7545047 (Fed. Cir. Nov. 14, 2023); *Goodgame v. Sec'y of Health & Human Servs*., 157 Fed. Cl. 62, 68 (2021) ("[A] claim that on its face . . . is not supported by the materials required by the Vaccine Act for a special master to be able to legally award compensation does not have a reasonable basis."). *But see Sheller*, 121 F.4th at 1307 (cautioning that, in some case, a "petitioner might have weaker evidence for *Althen* factor one (medical theory) than *Althen* factor two (logical sequence of cause and effect) but that should not preclude a special master from finding a reasonable basis").

Finally, I note that this is not a case in which there was a reasonable basis for initially filing the petition that later dissipated.

> [T]he subjective good faith of Petitioner's counsel, in accepting that Petitioner correctly informed him of the facts, does not bear on the objective inquiry of whether Petitioner's claim had sufficient reasonable basis to have been brought in the first place. Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual.

*Cortez v. Sec'y of Health & Human Servs*., No. 09-176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014) (citation omitted). The Federal Circuit has specifically confirmed that "counsel's subjective views on the adequacy of the complaint" are beyond the totality of the circumstances that may inform a reasonable basis analysis. *James-Cornelius*, 984 F.3d at 1379. Of particular note in this case, counsel secured Dr. Lee's two reports prior to initially filing the petition. Based on my review, Dr. Lee's reports put counsel on notice that there was not a reasonable basis to file a petition alleging SIRVA on this petitioner's behalf. Nor, for that matter, has counsel even advanced any argument as to why there was a reasonable basis for the filing of this petition.

## VI.    Conclusion

For all the reasons discussed above, there is not more than a mere scintilla of evidence to suggest that petitioner suffered any injury potentially consistent with the Table requirements for a SIRVA, which is the only injury pleaded by petitioner. Accordingly, the filing of this petition lacked a reasonable basis, and I therefore conclude that an award of attorneys' fees and costs is not appropriate.

Petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.

---

SIRVA criteria are accounted for accurately, it is patent that Dr. Lee's assessment, as stated in his initial report, is incompatible with SIRVA.

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master